Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:     (916) 443-6911
Facsimile:     (916) 447-8336
E-Mail:         mark@markmerin.com
               paul@markmerin.com

Attorneys for Plaintiff
KYRIEANNA LILES

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| KYRIEANNA LILES,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, MATTHEW TAMAYO, MATTHEW BOLLINGER, SPENCER HETTEMA, and JOHN HIGLEY,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS**<br><br>**DEMAND FOR JURY TRIAL** |

## **INTRODUCTION**

This case arises from the officer-involved shooting of KYRIEANNA LILES, a mentally ill woman, occurring on November 20, 2023, carried out by field training officer MATTHEW BOLLINGER and trainee SPENCER HETTEMA, deputies employed by the COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and Sheriff JIM COOPER, and contracted to provide law enforcement services by the CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and Police Chief MATTHEW TAMAYO.

1

**JURISDICTION & VENUE**

1.      This Court has original jurisdiction of the federal claims under 28 U.S.C. § 1331 (in that they arise under the United States Constitution) and § 1343(a)(3) (in that the action is brought to address deprivations, under color of state authority, of rights, privileges, and immunities secured by the United States Constitution).

2.      Venue is proper in the United State District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Eastern District of California and because many of the acts and/or omissions described herein occurred in the Eastern District of California.

3.      Intradistrict venue is proper in the Sacramento Division of the Eastern District of California pursuant to Eastern District of California Local Rule 120(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Sacramento, California.

**PARTIES**

4.      Plaintiff KYRIEANNA LILES is a resident of the County of Sacramento, California.

5.      Defendant COUNTY OF SACRAMENTO is located in the State of California. Defendant COUNTY OF SACRAMENTO is a "public entity" pursuant to California Government Code § 811.2.

6.      Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT is located in the County of Sacramento, California. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT is a "public entity" pursuant to California Government Code § 811.2.

7.      Defendant JIM COOPER is and was, at all times material herein, a law enforcement officer and the Sheriff for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant JIM COOPER is sued in an individual capacity.

8.      Defendant CITY OF RANCHO CORDOVA is located in the County of Sacramento, California. Defendant CITY OF RANCHO CORDOVA is a "public entity" pursuant to California Government Code § 811.2.

9.      Defendant RANCHO CORDOVA POLICE DEPARTMENT is located in the County of Sacramento, California. Defendant RANCHO CORDOVA POLICE DEPARTMENT is a "public entity" pursuant to California Government Code § 811.2.

2

10.    Defendant JIM COOPER is and was, at all times material herein, a law enforcement officer and the Sheriff for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant JIM COOPER is sued in an individual capacity.

11.    Defendant MATTHEW BOLLINGER is and was, at all times material herein, a law enforcement officer employed by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant MATTHEW BOLLINGER is sued in an individual capacity.

12.    Defendant SPENCER HETTEMA is and was, at all times material herein, a law enforcement officer employed by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant SPENCER HETTEMA is sued in an individual capacity.

13.    Defendant JOHN HIGLEY is and was, at all times material herein, a law enforcement officer employed by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant JOHN HIGLEY is sued in an individual capacity.

## GENERAL ALLEGATIONS

14.    At all times relevant herein, all wrongful acts described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

15.    At all times relevant herein, all law enforcement personnel identified herein, including Defendants MATTHEW BOLLINGER, SPENCER HETTEMA, and JOHN HIGLEY, were employed by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and contracted to provide law enforcement services of behalf of Defendants CITY OF RANCHO C ORDOVA and RANCHO CORDOVA POLICE DEPARTMENT.

### Mental Health

16.    Plaintiff KYRIEANNA LILES is a disabled person who has struggled with mental health and substance abuse issues, including post-traumatic stress disorder ("PTSD") and anxiety. Plaintiff KYRIEANNA LILES periodically experiences mental health issues and episodes related to her

disabilities.

17.     Plaintiff KYRIEANNA LILES's disabilities substantially limit major life activities, including, but not limited to, caring for oneself, speaking, concentrating, thinking, and communicating. For example, Plaintiff KYRIEANNA LILES's disabilities have caused her to become paranoid, easily confused, defensive, agitated, stressed, fearful, and anxious. Plaintiff KYRIEANNA LILES's disabilities have made it difficult for her, at times, to process information and to verbalize her own thoughts, feelings, and intentions.

18.     Plaintiff KYRIEANNA LILES's mental health issues are documented on law enforcement databases, including the Known Persons Finder ("KPF") database utilized by Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, CITY OF RANCHO CORDOVA, and RANCHO CORDOVA POLICE DEPARTMENT.

**Officer-Involved Shooting**

19.     On November 20, 2023, Plaintiff KYRIEANNA LILES was experiencing a mental health episode.

20.     Plaintiff KYRIEANNA LILES heard a dog barking in her neighbors' backyard which she believed to be that of her missing dog.

21.     At around 10:24 a.m., Plaintiff KYRIEANNA LILES called a police dispatcher. In response, the dispatcher reported: "RP'S DOG IS MISSING AND CAN HEAR IT BARKING FRM THIS NBRS HSE. RP KEEPS HANGING UP ON CSTN. NFI."

22.     Thereafter, Plaintiff KYRIEANNA LILES went to her neighbors' house while carrying a cooking knife which she used in her occupation as a chef.

23.     Plaintiff KYRIEANNA LILES knocked on the front door of her neighbors' residence. There was no answer.

24.     Plaintiff KYRIEANNA LILES went to the side of her neighbors' house and accessed a gate leading to the residence's backyard, from where she could hear a dog barking.

25.     In the backyard, Plaintiff KYRIEANNA LILES was confronted by her neighbors.

26.     The neighbors told Plaintiff KYRIEANNA LILES that she needed to leave the backyard. KYRIEANNA LILES left.

27. At around 10:27 a.m., the neighbors called a police dispatcher. In response, the dispatcher reported: "WFA 20S 5'5 120, BLND HRBLK LONG T SHIRT CHECKERED SHORT CARRYING BUTCHER KNIVE TRIED TO ENTERED C'S HOME SUBJ LS HEADING TWO MALAGA 4 AGO ON FOOT. [¶] SUBJ CAME TO C'S DR AND TRIED TO OPEN C'S FRONT DR AND WENT C'S GATE AND ENTERED C'S SIDE GATE AND TRIED DR TO HOME AND LEFT LOC."

28. At around 10:29 a.m., Plaintiff KYRIEANNA LILES again called a police dispatcher. In response, the dispatcher reported: "T21 TO RP, SAYS SHE NOW HAS HER DOG AND SHE IS SITTING HER ROOM. DENIES HAVING A KNIFE AND HU AGAIN."

29. Defendants MATTHEW BOLLINGER and SPENCER HETTEMA, sheriff's deputies, were dispatched to the scene.

30. Defendant MATTHEW BOLLINGER was a field training officer and Defendant SPENCER HETTEMA was a trainee. November 20, 2023, was Defendant SPENCER HETTEMA's sixth day of field training.

31. Defendants MATTHEW BOLLINGER and SPENCER HETTEMA linked-up the two calls for service from the neighbors and Plaintiff KYRIEANNA LILES based on proximity.

32. Defendants MATTHEW BOLLINGER and SPENCER HETTEMA looked-up Plaintiff KYRIEANNA LILES's "profile" through law enforcement databases, including the Known Persons Finder ("KPF") database. Therein, Defendants MATTHEW BOLLINGER and SPENCER HETTEMA learned about Plaintiff KYRIEANNA LILES's mental health issues, including a "history" of "several mental health calls" based on concerns for Plaintiff KYRIEANNA LILES's welfare.

33. Defendants MATTHEW BOLLINGER and SPENCER HETTEMA discussed Plaintiff KYRIEANNA LILES's mental health issues and the possibility that she could be subject to a mental health hold pursuant to California Welfare & Institutions Code § 5150.

34. At about 10:40 a.m., Defendants MATTHEW BOLLINGER and SPENCER HETTEMA arrived on scene at the neighbors' house.

35. The neighbors told Defendants MATTHEW BOLLINGER and SPENCER HETTEMA about their encounter with Plaintiff KYRIEANNA LILES. They reported that Plaintiff KYRIEANNA LILES asked about her dog, and that she put her knife away when asked to do so. The neighbors also

5

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Liles v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

1 reported that they did not feel threatened by Plaintiff KYRIEANNA LILES, and suspected that she was

2 suffering from a mental health episode.

3       36.    George Booth, a sheriff's deputy, arrived at the scene to assist Defendants MATTHEW

4 BOLLINGER and SPENCER HETTEMA.

5       37.    Defendant MATTHEW BOLLINGER asked the neighbors what they would like "to

6 happen" to Plaintiff KYRIEANNA LILES, if she were found. The neighbors responded, "Nothing."

7       38.    Defendant MATTHEW BOLLINGER summarized the neighbors' concerns: "It doesn't

8 sound like she was making, like, specific threats with a knife. Like, she wasn't, like, demanding things

9 from you with it, or anything. Kind of more like, you know, out of her mind, maybe, like drug-addled

10 thinking, you know: 'My dog's in your backyard.' Is that kind of more how it went?" The neighbors

11 agreed.

12       39.    Defendant MATTHEW BOLLINGER asked the neighbors, "We just wanted to figure out

13 if a crime had occurred?" The neighbors responded, "No."

14       40.    Defendant MATTHEW BOLLINGER told the neighbors, "If she is one of your

15 neighbors, then there's civil options you can take against her." The neighbors responded, "We don't want

16 to. We don't need any of that. Just making sure she doesn't go somewhere crazy."

17       41.    Defendant MATTHEW BOLLINGER asked Defendant SPENCER HETTEMA, "So,

18 what do you think we have so far? No…?" Defendant SPENCER HETTEMA responded, "No crime. Just

19 a possible trespassing." Defendant MATTHEW BOLLINGER corrected the response, "Well, it wouldn't

20 be trespass proper because she hasn't issued a notice of trespass here. And it's a residence, anyway, so…

21 But we ruled-out that -- a 417, right? Because they're not -- they didn't feel like they were being

22 threatened with the knife. She just had it while she was back in their backyard looking for their dog."

23       42.    Defendants MATTHEW BOLLINGER and SPENCER HETTEMA and George Booth

24 walked a few houses down the street to Plaintiff KYRIEANNA LILES's address.

25       43.    At about 10:50 a.m., Defendants MATTHEW BOLLINGER and SPENCER HETTEMA

26 and George Booth arrived at Plaintiff KYRIEANNA LILES's address.

27       44.    Plaintiff KYRIEANNA LILES was sitting inside of her vehicle, a Dodge Challenger, with

28 the engine off, in the driveway in front of her house, talking on her cell phone. A dog was located in the

6

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Liles v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

1    backseat of the vehicle.

2         45.    Defendant MATTHEW BOLLINGER approached Plaintiff KYRIEANNA LILES's

3    vehicle on the driver side from behind.

4         46.    Defendant MATTHEW BOLLINGER knocked on the driver-side window of the vehicle.

5         47.    Plaintiff KYRIEANNA LILES opened the driver-side door of her vehicle slightly.

6         48.    Plaintiff KYRIEANNA LILES stated, "I'm sorry. I'm talking -- I'm dealing with my

7    sister right now."

8         49.    Plaintiff KYRIEANNA LILES's dog stuck her head through the vehicle's opened door,

9    while wagging her tail and panting.

10        50.    Defendant MATTHEW BOLLINGER stated, "Can you control your dog?"

11        51.    Plaintiff KYRIEANNA LILES responded, "Yeah. She's just sitting there."

12        52.    Defendant MATTHEW BOLLINGER responded, "Okay."

13        53.    Plaintiff KYRIEANNA LILES stated, "I just got back from getting her. I'm sorry, I'm not

14   dealing with this right now. I'm going through a lot."

15        54.    Plaintiff KYRIEANNA LILES closed the door of her vehicle.

16        55.    Plaintiff KYRIEANNA LILES returned to utilizing the cellphone in her hands.

17        56.    Defendant MATTHEW BOLLINGER grabbed the vehicle's driver-side door handle and

18   opened the vehicle's door.

19        57.    Defendant SPENCER HETTEMA approached Defendant MATTHEW BOLLINGER,

20   and stood by his side, at the driver-side of the vehicle.

21        58.    Defendants MATTHEW BOLLINGER and SPENCER HETTEMA were able to see

22   inside of Plaintiff KYRIEANNA LILES's vehicle.

23        59.    Plaintiff KYRIEANNA LILES was wearing skin-tight shorts and a T-shirt, she held a

24   cellphone in her hands, and there were no weapons inside of the vehicle.

25        60.    Defendant MATTHEW BOLLINGER stated, "Ma'am, come out her for a minute."

26        61.    Plaintiff KYRIEANNA LILES responded, "No."

27        62.    Defendant MATTHEW BOLLINGER stated, "Yes."

28        63.    Plaintiff KYRIEANNA LILES responded, "No."

7

64.     Defendant MATTHEW BOLLINGER stated, "We got to talk about something."

65.     Plaintiff KYRIEANNA LILES responded, "Leave me alone."

66.     Defendant MATTHEW BOLLINGER held open the vehicle's door, while Plaintiff KYRIEANNA LILES remained preoccupied on her cellphone while seated in the vehicle's driver's seat.

67.     Defendant MATTHEW BOLLINGER stated, "Ma'am, step out of the car."

68.     Plaintiff KYRIEANNA LILES's dog continued wagging her tail and panting.

69.     Defendant MATTHEW BOLLINGER stated, "Hi, pup!"

70.     Plaintiff KYRIEANNA LILES stated, "Someone stole my dog."

71.     Defendant MATTHEW BOLLINGER questioned, "Someone stole your dog?"

72.     Plaintiff KYRIEANNA LILES responded, "Yeah. Like, all their gates are closed."

73.     Defendant MATTHEW BOLLINGER stated, "Okay. Do you live here?"

74.     Plaintiff KYRIEANNA LILES stated, "I went outside. Still, no gates are open and she's not in the backyard."

75.     Defendant MATTHEW BOLLINGER questioned, "Do you live here?"

76.     Plaintiff KYRIEANNA LILES responded, "Yes. I own this house."

77.     Defendant MATTHEW BOLLINGER questioned, "You own this house?"

78.     Plaintiff KYRIEANNA LILES responded, "Yes."

79.     Defendant MATTHEW BOLLINGER stated, "Okay. Step out here for a minute"

80.     Plaintiff KYRIEANNA LILES responded, "Oh, come on."

81.     Defendant MATTHEW BOLLINGER stated, "Step out of the car. Keep your hands in sight."

82.     Plaintiff KYRIEANNA LILES responded, "No. I didn't do anything wrong."

83.     Plaintiff KYRIEANNA LILES began to dial a number on her cellphone and a ring was audible.

84.     Defendant MATTHEW BOLLINGER believed that Plaintiff KYRIEANNA LILES was "going through a mental health episode," based on his interaction with her.

85.     Defendant MATTHEW BOLLINGER reached into the vehicle with his right arm and grabbed hold of the wrist of Plaintiff KYRIEANNA LILES's left arm and attempted to pull her out of the

8

vehicle.

86.     Plaintiff KYRIEANNA LILES held herself in the vehicle by bracing her left foot against the vehicle's opened drive-side door.

87.     Plaintiff KYRIEANNA LILES exclaimed, "Get off of me! You grabbed me! Stop!"

88.     Defendant SPENCER HETTEMA also reached into the vehicle with his left arm and grabbed hold of the forearm of Plaintiff KYRIEANNA LILES's left arm and joined Defendant MATTHEW BOLLINGER's attempted to pull her out of the vehicle.

89.     Defendant MATTHEW BOLLINGER stated, "Ma'm, it's okay."

90.     Plaintiff KYRIEANNA LILES responded, "I didn't do anything wrong."

91.     Plaintiff KYRIEANNA LILES pressed the ignition button of the vehicle and the engine started.

92.     Defendant MATTHEW BOLLINGER stated, "Don't start the car. No."

93.     Plaintiff KYRIEANNA LILES cried out, "Let go!"

94.     Defendants MATTHEW BOLLINGER and SPENCER HETTEMA continued their hold on Plaintiff KYRIEANNA LILES's left arm, attempting to pull her out of the vehicle.

95.     Defendants MATTHEW BOLLINGER and SPENCER HETTEMA failed to utilize appropriate law enforcement techniques and pre-shooting tactics when contacting Plaintiff KYRIEANNA LILES, including by failing to identify themselves as law enforcement officers, reaching into her vehicle and grabbing hold of her wrist without warning or explanation, and attempting to pull her out of her vehicle without warning or explanation. Defendants MATTHEW BOLLINGER and SPENCER HETTEMA's actions were non-compliant with California Peace Officer Standards and Training ("POST") and Sacramento County Sheriff's Department ("SCSD") policies, training, and standards, including: POST Learning Domain 20 (Use of Force/Deescalation); POST Learning Domain 26 (Critical Incidents); POST Learning Domain 33 (Arrest Methods/Defensive Tactics); POST Learning Domain 37 (People with Disabilities); SCSD General Order 2-11 (Use of Force); SCSD Operations Order 7-11 (Mentally Disturbed Person); and the SCSD Field Training Guide.

96.     At about 10:51 a.m., the vehicle began to move in reverse.

97.     Defendants MATTHEW BOLLINGER and SPENCER HETTEMA released their hold on

9

Plaintiff KYRIEANNA LILES's left arm and backed away from the vehicle.

98.     George Booth backed away from the vehicle, at the back of the driveway.

99.     The vehicle moved several feet in reverse before coming to a stop at the bottom of the driveway.

100.    Defendant MATTHEW BOLLINGER ran across the driveway, in front of the vehicle, and onto the bark-filled front yard located immediately adjacent to the driveway.

101.    Defendant MATTHEW BOLLINGER failed to utilize appropriate law enforcement techniques and pre-shooting tactics when running in front of Plaintiff KYRIEANNA LILES's vehicle. Defendant MATTHEW BOLLINGER's actions were non-compliant with California Peace Officer Standards and Training ("POST") and Sacramento County Sheriff's Department ("SCSD") policies, training, and standards, including: POST Learning Domain 20 (Use of Force/Deescalation); POST Learning Domain 26 (Critical Incidents); POST Learning Domain 33 (Arrest Methods/Defensive Tactics); POST Learning Domain 37 (People with Disabilities); SCSD General Order 2-11 (Use of Force); SCSD Operations Order 7-11 (Mentally Disturbed Person); and the SCSD Field Training Guide.

102.    Defendant SPENCER HETTEMA remained on the driveway.

103.    A large tree with a thick truck was located in the center of the front yard.

104.    Defendant MATTHEW BOLLINGER ran behind the tree trunk, positioning the tree trunk between himself and the vehicle.

105.    The vehicle moved forward following behind Defendant MATTHEW BOLLINGER.

106.    Defendant MATTHEW BOLLINGER was not at risk of begin struck by the vehicle after he positioned himself behind the tree trunk.

107.    The vehicle moved forward through the front yard, passing by Defendant MATTHEW BOLLINGER.

108.    Defendant MATTHEW BOLLINGER was never positioned in the path of the vehicle as it moved forward through the front yard.

109.    Defendant MATTHEW BOLLINGER unholstered his department-issued firearm.

110.     Defendant MATTHEW BOLLINGER began shooting wildly in the general direction of Plaintiff KYRIEANNA LILES and the passenger-side of the vehicle, as the vehicle passed by him.

10

111.    Defendant MATTHEW BOLLINGER fired his gun while holding it with one hand, with no trigger discipline, and without regard that his gunshots were directed towards a residence located immediately behind the passing vehicle at which he was aiming.

112.    The vehicle moved forward through the front yard and onto the street, driving away from the officers.

113.    Defendant MATTHEW BOLLINGER continued aiming and firing his weapon in the general direction of Plaintiff KYRIEANNA LILES and the back of the vehicle, as the vehicle drove away.

114.    Defendant MATTHEW BOLLINGER fired approximately seven rounds.

115.    Defendant SPENCER HETTEMA unholstered his department-issued firearm, aimed at the back of the vehicle, and joined Defendant MATTHEW BOLLINGER in firing his gun wildly, with no trigger discipline, and without regard that his gunshots were directed towards a residence located immediately behind the vehicle at which he was aiming.

116.    Defendant SPENCER HETTEMA fired approximately three rounds.

117.    George Booth did not shoot his firearm.

118.    Defendants MATTHEW BOLLINGER and SPENCER HETTEMA failed to utilize appropriate law enforcement techniques when utilizing deadly force against Plaintiff KYRIEANNA LILES, including by shooting at a non-suspect where no crime had been committed, shooting without any active threat or exigency, shooting at the back of a fleeing person, shooting without warning, shooting at a mentally ill person, and shooting wildly and recklessly in an occupied residential area. Defendants MATTHEW BOLLINGER and SPENCER HETTEMA's actions were non-compliant with California Penal Code § 835a, California Peace Officer Standards and Training ("POST"), and Sacramento County Sheriff's Department ("SCSD") policies, training, and standards, including: POST Learning Domain 20 (Use of Force/Deescalation); POST Learning Domain 26 (Critical Incidents); POST Learning Domain 33 (Arrest Methods/Defensive Tactics); POST Learning Domain 37 (People with Disabilities); SCSD General Order 2-05 (Use of Firearms); SCSD General Order 2-11 (Use of Force); SCSD Operations Order 7-11 (Mentally Disturbed Person); and the SCSD Field Training Guide.

119.    Approximately six of the bullets fired by Defendants MATTHEW BOLLINGER and

11

SPENCER HETTEMA struck Plaintiff KYRIEANNA LILES's vehicle.

120.    Plaintiff KYRIEANNA LILES was struck by a bullet fired by Defendant MATTHEW BOLLINGER or SPENCER HETTEMA. The bullet entered Plaintiff KYRIEANNA LILES's right upper-arm, passed through, and exited.

121.    Several other of bullets which were errantly-fired by Defendants MATTHEW BOLLINGER and SPENCER HETTEMA were lodged in multiple areas around the scene, including inside of nearby residences which endangered the occupants.

122.    Defendant MATTHEW BOLLINGER looked at Defendant SPENCER HETTEMA and stated, "Shit."

123.    Plaintiff KYRIEANNA LILES's vehicle drove away from the scene.

**Arrest**

124.    At about 10:52 a.m., Defendants MATTHEW BOLLINGER and SPENCER HETTEMA returned to their vehicle and pursued Plaintiff KYRIEANNA LILES's vehicle. George Booth returned to his separate vehicle and also joined in the pursuit.

125.    During the pursuit, Defendant MATTHEW BOLLINGER received an inquiry over the police radio, "Can we just confirm: was she firing the shots at officers or was she armed?"

126.    Defendant MATTHEW BOLLINGER responded over the radio, "The suspect was not firing shots at officers. She attempted to run over deputies with her vehicle, as she fled the scene."

127.    Defendant MATTHEW BOLLINGER's report over the radio was false, where Plaintiff KYRIEANNA LILES did not attempt to run over deputies with her vehicle.

128.    At about 11:12 a.m., Plaintiff KYRIEANNA LILES pulled her vehicle over.

129.    George Booth parked his patrol vehicle behind Plaintiff KYRIEANNA LILES's vehicle.

130.    Thereafter, several other law enforcement officers arrived, including Defendant JOHN HIGLEY, and also parked their patrol vehicles behind Plaintiff KYRIEANNA LILES's vehicle.

131.    Plaintiff KYRIEANNA LILES's complied with the officers' commands to turn-off her vehicle's engine, throw her keys outside of her vehicle, get out of her vehicle with her hands in the air, turn around, and walk backwards towards the officers while holding her hands on the back of her head.

132.    When Plaintiff KYRIEANNA LILES was near the front of George Booth's patrol vehicle,

12

the officers commanded, "Get on your knees!"

133.    Plaintiff KYRIEANNA LILES continued to comply by squatting down to the ground, on her knees, while holding her hands to her head with blood streaming down her right arm.

134.    The officers approached Plaintiff KYRIEANNA LILES with several weapons pointed at her.

135.    The officers shouted, "Do not move!"

136.    Plaintiff KYRIEANNA LILES continued to comply with the officers' commands.

137.    Plaintiff KYRIEANNA LILES was visibly injured from the gunshot wound to her right arm.

138.    Blood covered the right side of Plaintiff KYRIEANNA LILES's body, from her right arm and hand down her right leg, including staining her shorts.

139.    Defendant JOHN HIGLEY charged towards Plaintiff KYRIEANNA LILES, as she sat motionless on the ground, on her knees, holding her hands on her head.

140.     Defendant JOHN HIGLEY used his left arm to grab hold of Plaintiff KYRIEANNA LILES's left arm.

141.    Defendant JOHN HIGLEY placed his right arm on Plaintiff KYRIEANNA LILES's upper back.

142.    Defendant JOHN HIGLEY pushed Plaintiff KYRIEANNA LILES from a seated position on her knees face-first into the asphalt on the street.

143.    Defendant JOHN HIGLEY's push caused Plaintiff KYRIEANNA LILES to fall forward and her knees and body to scrape the ground.

144.     Defendant JOHN HIGLEY continued to hold Plaintiff KYRIEANNA LILES's left arm, as he pushed her face-first into the ground, preventing Plaintiff KYRIEANNA LILES from bracing herself as she was pushed forward.

145.    Plaintiff KYRIEANNA LILES cried out in pain, "Ow! Ow!," as Defendant JOHN HIGLEY slammed her body to the ground.

146.    Defendant JOHN HIGLEY roughly twisted Plaintiff KYRIEANNA LILES's arms behind her back, including her bloody right hand, without regard to her injured right arm.

147.    Defendant JOHN HIGLEY roughly applied tight handcuffs to Plaintiff KYRIEANNA LILES's arms, without regard to her injured right arm.

148.    Defendant JOHN HIGLEY roughly rolled Plaintiff KYRIEANNA LILES along the ground and lifted her shirt three times, exposing her bare abdomen and breasts.

149.    Defendant JOHN HIGLEY failed to utilize appropriate law enforcement techniques when apprehending, handcuffing, and searching Plaintiff KYRIEANNA LILES, including by slamming her face-first to the ground, twisting her injured and bleeding arm behind her back, and tightly applying handcuffs to her injured and bleeding arm. Defendants JOHN HIGLEY's actions were non-compliant with California Peace Officer Standards and Training ("POST") and Sacramento County Sheriff's Department ("SCSD") policies, training, and standards, including: POST Learning Domain 20 (Use of Force/Deescalation); POST Learning Domain 26 (Critical Incidents); POST Learning Domain 33 (Arrest Methods/Defensive Tactics); POST Learning Domain 34 (First Aid, CPR, and AED); POST Learning Domain 37 (People with Disabilities); SCSD Operations Order 2-02 (Use of Restraint Devices); SCSD General Order 2-11 (Use of Force); SCSD Operations Order 7-11 (Mentally Disturbed Person); and the SCSD Field Training Guide.

## Reports

150.    Shortly after the shooting began, Defendants MATTHEW BOLLINGER and SPENCER HETTEMA left the vehicle pursuit to return to the scene of the shooting. At about 11:01 a.m., Defendant SPENCER HETTEMA provided a statement to his superiors. Defendant SPENCER HETTEMA stated, "She was parked in the driveway, in the Challenger. She wasn't getting out of the car, and so she turned around, backed out. We backed away. And she literally drove at Bollinger. And he pulled out his gun and shot. And I shot too, as well, while she was pulling -- burning out, out of here."

151.    Defendant SPENCER HETTEMA's report of the incident to his superiors was false, where Plaintiff KYRIEANNA LILES did not drive at Defendants MATTHEW BOLLINGER, but Defendant SPENCER HETTEMA's report that he shot his gun after Plaintiff KYRIEANNA LILES's vehicle had passed the officers and "was pulling … out of here" was true.

152.    On November 21, 2023, at about 11:37 a.m., Defendant MATTHEW BOLLINGER was interviewed by Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's Homicide

14

Bureau, with his lawyer present. During the interview, Defendant MATTHEW BOLLINGER reported:

> By the time I turned around, the only thing that I saw was the front of her car, which had successfully made it around the tree and it was now coming directly towards me, and I was standing there in the open front yard. Uh, my -- there was no doubt in my mind that her intent was to hit me with her car and kill me. That it was imminent. . . . Uh, I had no cover at that point. The only choice that I had was to draw my service weapon and begin firing at the passenger compartment of her car as she was coming at me. Uh, her vehicle changed course and drove by me to my right -- going by this way. I continued firing at her vehicle, uh, and I ceased firing as soon as I -- as soon as it became apparent to me -- as soon as my mind registered that the vehicle was traveling by me, and that there was no greater threat to me at that point.

153.    Defendant MATTHEW BOLLINGER's report of the incident was false, where Defendant MATTHEW BOLLINGER was never at risk of being run over by Plaintiff KYRIEANNA LILES's vehicle in the front yard, and where Defendant MATTHEW BOLLINGER shot at Plaintiff KYRIEANNA LILES and her vehicle when it was not a threat to anyone.

154.    On November 21, 2023, at about 1:16 p.m., Defendant SPENCER HETTEMA was interviewed by Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's Homicide Bureau, with his lawyer present. During the interview, Defendant SPENCER HETTEMA reported:

> Deputy Bollinger was at that point, running for his life. You can see it on his face, um, towards the tree. And he continued to turn it, uh, turn the car towards him. Um, and you can see that she was floored or just throttling the car as hard as she could, because it was drifting. You could hear the revving of the engine. Um, it was throwing bark at me and anybody else that was behind it. Um, and Deputy Bollinger, as the car was coming, uh, towards him, he pulled his gun out and he fired, um, at her. And at that point, um, when I saw Deputy Bollinger in front of the grille of the car, as it was approaching him, I pull out my gun after he fired maybe two rounds. Taking in the fact that because he fired, that's one factor in the totality of the circumstances that played a part in saying that he knew his life was in danger. Um, and I knew that his life was in danger because that car was barreling towards him while he was standing in front of the grille. I fired, um, three to four rounds, um, to try and stop that imminent threat of danger to Deputy Bollinger's life. Um, until the car passed Deputy Bollinger, and that's when I stopped firing and holstered my gun.

155.    Defendant SPENCER HETTEMA's report of the incident was false, where Defendant MATTHEW BOLLINGER was never at risk of being run over by Plaintiff KYRIEANNA LILES's vehicle in the front yard, and where Defendants MATTHEW BOLLINGER and SPENCER HETTEMA shot at Plaintiff KYRIEANNA LILES and her vehicle when it was not a threat to anyone.

15

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Liles v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

156.     On November 21, 2023, Defendant JOHN HIGLEY reported his arrest of Plaintiff KYRIEANNA LILES in a written report. Therein, Defendant JOHN HIGLEY reported: "LILES eventually exited the vehicle, dropped down to her knees, but did not prone herself out on the ground. I approached LILES and gained control of one of her arms, forced her into the prone position, and detained her in handcuffs."

157.     Defendant JOHN HIGLEY's report that Plaintiff KYRIEANNA LILES did not prone herself out on the ground was a pretext for his unreasonable force applied during her arrest her, where she complied with all commands issued by the officers and where no officer at the scene commanded her to "prone out" on the ground.

158.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO have failed to discipline, re-train, and correct the misconduct of Defendants MATTHEW BOLLINGER, SPENCER HETTEMA, and JOHN HIGLEY based on the verifiable inaccuracies and outright lies contained in their post-incident reports.

**Press Release and Video**

159.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO required their personnel to create a press release and narrative of the officer-involved shooting incident which portrayed Plaintiff KYRIEANNA LILES negatively and involved personnel favorably, and which suggested that the unjustified use of deadly force was justified.

160.     On December 31, 2023, Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO published a press release and video related to the incident. <https://www.youtube.com/watch?v=nXOf9D9nkXs>.

161.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO's press release and video is misleadingly edited to exclude

16

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Liles v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

the body-worn camera recordings of the shooting from the perspectives of Defendants MATTHEW BOLLINGER and SPENCER HETTEMA, the shooting officers; only the body-worn camera recording of the shooting from the perspective of George Booth, the non-shooting officer, is included.

162.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA DEPARTMENT, and MATTHEW TAMAYO's press release and video intentionally excludes the body-worn camera recordings of the shooting from the perspectives of Defendants MATTHEW BOLLINGER and SPENCER HETTEMA because those recordings show that the shooting was unjustified and that Defendants MATTHEW BOLLINGER and SPENCER HETTEMA fired wildly at the rear of Plaintiff KYRIEANNA LILES's vehicle without the presence of any threat.

163.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO's press release and video is incomplete and missing important context, including Defendants MATTHEW BOLLINGER and SPENCER HETTEMA's pre-incident research of Plaintiff KYRIEANNA LILES's mental health history and discussion and acknowledgement that Plaintiff KYRIEANNA LILES has committed "no crime."

164.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO's press release and video contains a misleading and biased narration by Defendants SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's spokesman and public information officer, Amar Gandhi, who narrates over the officer-involved shooting footage from George Booth's limited perspective, including stating: "After reversing a short distance, she drove towards an officer who's positioned on the front lawn of the residence. She then turned her vehicle toward the officer and accelerated toward him. The officer was able to move out of the way and shot seven times towards the suspect. His partner shot three times towards the vehicle."

165.    The spokesman and public information officer's narration of the video is false, where Defendant MATTHEW BOLLINGER was never at risk of being run over by Plaintiff KYRIEANNA LILES's vehicle in the front yard, and where Defendants MATTHEW BOLLINGER and SPENCER

17

1    HETTEMA shot at Plaintiff KYRIEANNA LILES and her vehicle when it was not a threat to anyone.

2        166.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

3    DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA

4    DEPARTMENT, and MATTHEW TAMAYO's press release and video intentionally scripted the edited

5    and incomplete shooting footage, which excludes the body-worn camera recordings of the shooting from

6    the perspectives of Defendants MATTHEW BOLLINGER and SPENCER HETTEMA.

7        167.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

8    DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA

9    DEPARTMENT, and MATTHEW TAMAYO's press release and video misrepresents the experience of

10   Defendant SPENCER HETTEMA, where the spokesman and public information officer states: "The

11   second deputy who fired three rounds is a two-year veteran of law enforcement and has been with the

12   sheriff's office since November of 2021."

13       168.    The spokesman and public information officer's narration on the video is misleading,

14   where Defendant SPENCER HETTEMA was a trainee who in only his sixth day of field training at the

15   time of the officer-involved shooting incident on November 20, 2023.

16       169.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

17   DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE

18   DEPARTMENT, and MATTHEW TAMAYO knew that information contained in the press release and

19   video was false, incomplete, and misleading, based on the information available at the time that the press

20   release and video was published on December 31, 2023. Defendants COUNTY OF SACRAMENTO,

21   SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, CITY OF RANCHO

22   CORDOVA, RANCHO CORDOVA DEPARTMENT, and MATTHEW TAMAYO chose to publish the

23   false, incomplete, and misleading press release and video because they sought to influence the general

24   public's perception of the unlawful shooting. *See* Nigel Duara, *A California law forced police to release*

25   *shooting footage. Now videos follow the same script.* (April 10, 2023), available at:

26   <https://calmatters.org/justice/2023/04/california-police-shooting-videos/>.

27       170.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

28   DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA

DEPARTMENT, and MATTHEW TAMAYO decision to publish the false, incomplete, and misleading press release and video violated public disclosure laws, including California Penal Code § 832.7.

## POLICY / CUSTOM ALLEGATIONS

171.    Defendant JIM COOPER, in his capacity as Sheriff, is and was a final policymaking authority for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, including as it relates to the training, supervision, and discipline of law enforcement personnel under his command. Sacramento County Sheriff's Department, General Order 1-15 (Sheriff's Executive Staff). Defendant JIM COOPER has served as Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's Sheriff since December 2022.

172.    Defendant MATTHEW TAMAYO, in his capacity as Police Chief, is and was a final policymaking authority for Defendants CITY OF RANCHO CORDOVA and RANCHO CORDOVA POLICE DEPARTMENT, including as it relates to the training, supervision, and discipline of law enforcement personnel under his command. Cal. Gov. Code § 38630(a). Defendant MATTHEW TAMAYO has served as Defendants CITY OF RANCHO CORDOVA and RANCHO CORDOVA POLICE DEPARTMENT's Police Chief since November 2023.

173.    Defendants CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO are responsible for the failures and inadequacies of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's policies and customs, including that of their employees Defendants MATTHEW BOLLINGER, SPENCER HETTEMA, and JOHN HIGLEY, where Defendants CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO have entrusted and contracted their constitutional and statutory duties to provide law enforcement services to Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER.

174.    <u>Mental Health</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, and, thus, Defendants CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO maintained inadequate policies or customs of training, supervision, and discipline of officers under their command

19

related to confrontations with persons experiencing or suffering from documented or apparent mental health crises.

175.   Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, and, thus, Defendants CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO knew or should have known that a substantial number of contacts wherein force had been applied have occurred between their law enforcement personnel and persons who are mentally ill and/or substance-impaired who do not respond in the way persons who are not mentally ill do to orders, commands, brusk and direct language, and escalating force. For example, Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, CITY OF RANCHO CORDOVA, and RANCHO CORDOVA POLICE DEPARTMENT regularly received calls for service and assistance with persons undergoing mental health crises and, as a result, personnel under their command are on the front lines in dealing with persons with mental health problems, including KYRIEANNA LILES.

176.   Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, and, thus, Defendants CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO failed to promulgate specific policies and customs and to train officers under their command in the application of necessary policies, including those prescribed by California Peace Officer Standards and Training ("POST") learning domains, including Learning Domain 20 (Use of Force/Deescalation); POST Learning Domain 26 (Critical Incidents); POST Learning Domain 33 (Arrest Methods/Defensive Tactics); and POST Learning Domain 37 (People with Disabilities).

177.   Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, and, thus, Defendants CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO failed adequately to train, supervise, and discipline officers under their command in critical areas related to mental illness and/or substance-impaired persons, including Defendants MATTHEW BOLLINGER and SPENCER HETTEMA. For example:

(a)   how and when to call for the assistance of officers or professionals with

20

1   specialized training in dealing with mental illness, when possible;

2           (b)     how and when to approach persons suffering from mental disability or substance

3   impairment;

4           (c)     how and when to speak to persons suffering from a mental disability or substance

5   impairment;

6           (d)     how and when to interact with persons suffering from mental disability or

7   substance impairment (including using appropriate body language and tone of voice);

8           (e)     how and when to respect the personal space of persons suffering from mental

9   disability or substance impairment;

10          (f)     how and when to provide reasonable accommodations for persons suffering from

11  mental disability or substance impairment; and

12          (g)     how and when to de-escalate, without use of force, incidents involving persons

13  suffering from mental disability or substance impairment.

14      178.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

15  DEPARTMENT, and JIM COOPER, and, thus, Defendants CITY OF RANCHO CORDOVA,

16  RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO knowingly participated

17  in, acquiesced to, and/or were deliberately indifferent to the creation and maintenance of an informal

18  policy or custom whereby personnel are permitted to mistreat and escalate encounters with mentally ill

19  and/or substance-impaired persons. For example:

20          (a)     On December 6, 2022, 48-year-old Sherrano Stingley, an unarmed and mentally-ill

21  Black man, was rendered braindead by Defendant SACRAMENTO COUNTY SHERIFF'S

22  DEPARTMENT's personnel, including deputies Freddy Martinez, Rachell Villegas, and Brittany Linde.

23  Sacramento County Sheriff's Department, Report No. 22-360884. The subject was experiencing a mental

24  health episode when he attempted to enter a residence he mistook for his daughter's home. (The

25  daughter's house was a few doors down.) The deputies arrived at the scene and confronted the subject,

26  who was confused, had his pants around his legs, and was missing his shoes. The subject complied with

27  the deputies' commands to get on the ground. The deputies struck him on the head with a flashlight,

28  forced him to lie prone on the ground, and piled on top of him while pressing body-weight on top of his

head, chest, and legs. The subject struggled to breathe and cried out the name of his daughter before he was rendered unconscious and braindead within minutes. The deputies failed to notice the subject's unconsciousness. The subject died days later. The County of Sacramento and Sacramento County Sheriff's Department published a press release and edited video of the officer-involved death incident which portrayed the subject negatively and involved deputies favorably, and which suggested that the unjustified use of deadly force was justified. <https://www.youtube.com/watch?v=pbCoAwE6W_E>. The video footage provided on the video was incomplete and limited to the perspective of one deputy, despite the availability of two other angles which demonstrated that the officers utilized excessive force. The press release and video provided a narration which falsely portrayed the subject's actions, excluded the subject's cries, gasps for air, and statement "I'm not resisting!" Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT deemed the deputies' conduct to be within policy. A civil rights lawsuit was filed. *Estate of Stingley v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:23-cv-00255-TLN-AC. The case remains pending.

(b)     On November 21, 2019, a 26-year-old mentally ill man was arrested by Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's personnel, including deputies Terrence McDonald, Andrew Neil, David Derouen, Noah Luger, and Matthew Tam. Sacramento County Sheriff's Department, Report No. 19-416979. Therein, the subject was experiencing a mental health episode and acting "erratically," including jumping onto a fire truck and yelling, "help me, I need air." Responding deputies instructed the subject to lie on the ground, on his stomach, and he complied. The deputies handcuffed the subject's arms behind his back. The subject continued to move while handcuffed on the ground, including twisting his upper body from side-to-side. Deputy McDonald "placed [his] right knee in the middle of the male subject['s] shoulder blades" and told the subject, "My knee is stronger than you, you cannot get up." Deputy Neil "put [his] knee on [the subject's] lower back directly above his buttocks and applied [his] body weight," which was "in excess of 250 pounds…" Deputy Derouen applied "upward pressure" to the subject's wrists "to prevent him from lifting his upper body off the ground…" Deputy Luger "put [his] body weight on [the subject's] lower legs…" Deputy Tam "applied a figure four control hold to [the subject's] legs" and then "straightened [the subject's] legs and crossed his legs at his ankles" and "placed [his] legs across the top of [the subject's] legs…" Once the subject's

ankles were "secured" with "maximum restraints," Deputy Luger "plac[ed] [a] Taser underneath [the subject's] left shoulder blade" and "delivered a 5 second cycle 'Drive Stun' to [the subject's] back underneath his shoulder blades" and "delivered another 5 second cycle to the same location on [the subject's] back." The subject was "yelling incoherently and rapidly breathing." The subject lost consciousness with the deputies on top of him. "The medical personal noticed the male subject was unresponsive." The deputies dismounted the subject and "removed the handcuffs for medical personal to rendered aid. The male subject regained his consciousness and started breathing on his own." Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT deemed the deputies' conduct to be within policy.

(c)     On May 8, 2017, 32-year-old Mikel McIntyre, an unarmed and mentally-ill Black man, was shot and killed by Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's personnel, including deputies Jeffrey Wright, Ken Becker, and Gabriel Rodriguez. Sacramento County Sheriff's Department, Report No. 17-150089. The subject was known to be experiencing a mental health episode, where deputies conducted a mental health contact with the subject hours earlier. During the subsequent contact, the subject threw a rock and attempted to flee from the deputies. In response, the deputies shot at the subject with 26 bullets, killing him. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT deemed the deputies' conduct to be within policy. A civil rights lawsuit was filed. *N.M. v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:18-cv-01830-WBS-KJN. The case was settled pre-trial for $1,725,000.

(d)     On November 24, 2016, 17-year-old Logan Augustine, a mentally ill boy, was shot and killed by Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's personnel, including deputy James Schaefers. Sacramento County Sheriff's Department, Report No. 16-354725. The subject experienced a mental health episode inside of a 7-11 convenience store and called 9-1-1. The subject was cornered inside of the store and held a pocketknife to his own throat. A deputy fired a less-lethal round at the subject, which caused him to flinch. In response to the subject's flinching, deputy Schaefers fired a gunshot into the subject's neck, while he was non-threating, killing him. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT deemed the deputy's conduct to be within policy. A civil rights lawsuit was filed. *Augustine v. County of Sacramento*, United States District Court,

1   Eastern District of California, Case No. 2:17-cv-02605-WBS-AC. The case was settled pre-trial.

2          (e)    On September 23, 2016, Jesse Attaway, a mentally ill man, was shot and killed by

3   Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's personnel, including deputies

4   Andrew Cater and Bao Mai. Sacramento County Sheriff's Department, Report No. 16-285423. The

5   subject entered and attempted to enter multiple homes but left without causing any harm to the people or

6   property. The deputies were dispatched to the scene and found the subject walking away. The subject

7   refused the deputies' commands to stop. The deputies exited their patrol vehicle and approached the

8   subject. The subject raised his arms, clasped his hands together in front of him, cocked his head between

9   his arms, and screamed "Ahhh!" The subject's mental illness was apparent. Deputy Cater yelled

10  "Coming at me!," and the deputies fired at least fourteen shots at the subject, killing him. Defendant

11  SACRAMENTO COUNTY SHERIFF'S DEPARTMENT deemed the deputies' conduct to be within

12  policy. A civil rights lawsuit was filed. *Rivera v. Cater*, United States District Court, Eastern District of

13  California, Case No. 2:18-cv-00056-WBS-EFB. The case was settled pre-trial.

14         (f)    On January 17, 2012, 24-year-old Johnathan Rose, a mentally ill man, was shot

15  and killed by Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's personnel,

16  including deputy David McEntire. Sacramento County Sheriff's Department, Report No. 12-12655. The

17  subject was schizophrenic and experienced a mental health episode, prompting his father to call 9-1-1 to

18  assist with administration of the subject's medications. Prior to the arrival of officers, the subject took his

19  medications and went to sleep in his bed. Deputy McEntire arrived at the subject's home, "brushed"

20  aside the subject's father, and approached the subject's bed where he was sleeping. Deputy McEntire

21  woke the subject and ordered him to lie face down on the ground to be handcuffed. The subject refused

22  to lie on the ground but presented his hands to be handcuffed. In response, deputy McEntire struck the

23  subject on the head with a flashlight, prompting an altercation. Deputy McEntire was in control and

24  winning the fight when, without warning or provocation, he fatally shot the subject three times at point

25  blank range, killing him. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT deemed

26  the deputy's conduct to be within policy. A civil rights lawsuit was filed. *Rose v. County of Sacramento*,

27  United States District Court, Eastern District of California, Case No. 2:13-cv-01339-TLN-EFB. The case

28  settled post-trial following a $6,500,000 jury verdict for the plaintiffs.

179.   <u>Unreasonable Force</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, and, thus, Defendants CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO failed adequately to train, supervise, and discipline officers under their command in critical areas related to unreasonable force, including Defendants MATTHEW BOLLINGER, SPENCER HETTEMA, and JOHN HIGLEY. For example:

(a)   the application of excessive and unreasonable use of force against non-threatening persons;

(b)   the inadequate training of personnel with respect to the use of force;

(c)   the employment, retention, supervision, training, control, assignment, and disciple of personnel with dangerous propensities for abusing authority;

(d)   the maintenance of inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by personnel;

(e)   the inadequate or non-existent discipline of personnel, including imposition of discipline that is disproportional to the magnitude of the misconduct and fails to discourage future misconduct or is tantamount to encouraging misconduct ("slaps on the wrist");

(f)   the announcement that unjustified uses of force are "within policy," including incidents that are later determined in court or implied through settlement to be non-compliant with policy or unlawful;

(g)   the inadequate investigation of uses of force, including refusal to consider relevant witness and evidence;

(h)   the untimely, delayed, or prolonged investigation of uses of force, such that determination of culpability, if any, is returned after the period of time during which effective corrective action or meaningful discipline can be taken;

(i)   the refusal to discipline, terminate, or retrain personnel, where uses of force are determined in court or implied through settlement to be non-compliant with policy or unlawful;

(j)   the encouragement, accommodation, or facilitation of a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," "blue line," "turn a blind eye," or "code of

25

silence," pursuant to which personnel do not report errors, misconduct, or crimes and, if questioned about an incident of misconduct involving another officer, claim ignorance of misconduct; and

        (k)    the maintenance of a policy of inaction and an attitude of indifference towards ongoing law enforcement use of force incidents, including by failing to discipline, retrain, investigate, terminate, and recommend personnel for criminal prosecution who participate in unlawful uses of force.

    180.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, and, thus, Defendants CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO knowingly participated in, acquiesced to, and/or were deliberately indifferent to the creation and maintenance of a culture permitting or encouraging personnel's use of unreasonable and excessive force, including Defendants MATTHEW BOLLINGER, SPENCER HETTEMA, and JOHN HIGLEY. For example, in addition to those incidents described above and incorporated herein:

        (a)    On May 8, 2017, 32-year-old Mikel McIntyre, an unarmed and mentally-ill Black man, was shot and killed by Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's personnel, including deputies Jeffrey Wright, Ken Becker, and Gabriel Rodriguez. Sacramento County Sheriff's Department, Report No. 17-150089. The subject was known to be experiencing a mental health episode, where deputies conducted a mental health contact with the subject hours earlier. During the subsequent contact, the subject threw a rock and attempted to flee from the deputies. In response, the deputies shot at the subject with 26 bullets, killing him. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT deemed the deputies' conduct to be within policy. A civil rights lawsuit was filed. *N.M. v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:18-cv-01830-WBS-KJN. The case was settled pre-trial for $1,725,000. The Sacramento County Inspector General's Office issued an officer-involved shooting review of the incident. <https://inspectorgeneral.saccounty.net/Documents/McIntyre_OIS_Report.pdf>. Therein, the inspector general found that the deputies fired an "excessive, unnecessary" number of rounds during the shooting. In response to the critical report, Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT and sheriff Scott Jones retaliated against the inspector general by locking the inspector general out of agency offices and jail facilities and preventing further oversight

26

1    of official misconduct.

2              (b)       On October 21, 2017, Mayco Rodrique was arrested and booked into the

3    Sacramento County Main Jail by Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's

4    personnel, including Jarrod Hopeck and Jeffrey Wilson. Deputy Hopeck intentionally twisted and broke

5    the subject's arm, during the jail intake process. The subject was confined to a "sobering" cell and denied

6    access to medical staff for 20 minutes, while deputy Hopeck taunted him through a window on the cell

7    door. The incidents were captured on the jail's surveillance cameras. A citizen complaint was filed.

8    Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT "exonerated" deputy Hopeck.

9    Sacramento County Sheriff's Department, Report No. 17-303197. A civil rights lawsuit was filed.

10   *Rodrique v. County of Sacramento*, United States District Court, Eastern District of California, Case No.

11   2:17-cv-02698-WBS-EFB. The case was settled pre-trial for $97,500. The lawsuit resulted in disclosure

12   of numerous citizen complaints and dispositions from Defendant SACRAMENTO COUNTY

13   SHERIFF'S DEPARTMENT. <https://www.sacbee.com/opinion/article238722483.html>. The citizen

14   complaint files revealed Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY

15   SHERIFF'S DEPARTMENT and sheriff Scott Jones were "concealing the violent abuse of inmates by

16   deputies in his jail and allowing the guilty deputies to remain in uniform." For example, sheriff Scott

17   Jones overruled a recommendation to discipline a subordinate who was captured on camera using

18   excessive use-of-force; and "exonerated" numerous meritorious citizen complaints against personnel.

19   <https://www.sacbee.com/news/investigations/article238544198.html>.

20             (c)       Paul "Scotte" Pfeifer was a sheriff's deputy employed by Defendants COUNTY

21   OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and sheriff Scott Jones.

22   Deputy Pfeifer utilized excessive force against persons he encountered on multiple occasions, including

23   by striking them with a department-issued flashlight. Deputy Pfeifer's assaults were documented and

24   captured on recordings on multiple occasions. For example, deputy Pfeifer's assaults resulted in multiple

25   lawsuits, each of which Defendant COUNTY OF SACRAMENTO settled for substantial amounts paid

26   to injured plaintiffs. *Treshchuk v. McGinness*, United States District Court, Eastern District of California,

27   Case No. 2:09-cv-00691-MCE-EFB (Deputy Pfeifer struck the plaintiff in her legs multiple times with a

28   flashlight; case settled pre-trial for $20,000); *Reyes v. County of Sacramento*, Superior Court of

27

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Liles v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

California, County of Sacramento, Case No. 34-2015-00184139-CU-CR-GDS & United States District Court, Eastern District of California, Case No. 2:15-cv-02213-JAM-DB (Deputy Pfeifer was recorded assaulting the plaintiff in the middle of street, including by striking him multiple times with a flashlight; case was settled pre-trial for $200,000); *Donohue v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:15-cv-01488-CKD (Deputy Pfeifer was recorded assaulting the plaintiff while he was sitting in the driver's seat of a vehicle surrendering; case settled pre-trial for $150,000); *see* <https://www.sacbee.com/news/investigations/the-public-eye/article107619287.html>. Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and sheriff Scott Jones failed adequately to supervise, re-train, or discipline deputy Pfeifer following each of the incidents of misconduct and he was retained as an employee.

(d)      Several jury verdicts have been entered against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and/or their personnel, where excessive and unreasonable force was proven at trial. For example: *Rose v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:13-cv-01339-TLN-EFB (jury verdict against two sheriff's deputies who used excessive force when they shot and killed a mentally-ill man inside of his home); *Reese v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:13-cv-00559-WBS-DB (jury verdict against sheriff's deputy who used excessive force when he shot a man inside of his home upon opening a door in response to the deputy's command); *Jones v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:09-cv-1025-DAD (jury verdict for excessive force against five sheriff's deputies); *Antoine v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:06-cv-01349-WBS-GGH (jury verdict for excessive force against five sheriff's deputies); *Hunter v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:06-cv-00457-GEB-AC (jury verdict for policy or custom of subjecting inmates to excessive force against the County of Sacramento); *Tubbs v. Sacramento County Jail*, United States District Court, Eastern District of California, Case No. 2:06-cv-00280-LKK-GGH (jury verdict for excessive force and integral participation against four sheriff's deputies); *Johnson v. Sacramento County*, United States District Court, Eastern District of California, Case No. 2:06-cv-00169-RRB-GGH (jury verdict for excessive force against multiple

28

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Liles v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

1   sheriff's deputies).

2           (e)     Numerous settlements have been paid by Defendant COUNTY OF

3   SACRAMENTO, resulting from misconduct by Defendants COUNTY OF SACRAMENTO and

4   SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, sheriff Scott Jones, and/or their personnel,

5   including to settle litigation where excessive and unreasonable force was alleged and may have been

6   proven, if tried. For example: *Flemmings v. County of Sacramento*, United States District Court, Eastern

7   District of California, Case No. 2:20-cv-00500-WBS-AC (settlement of action alleging that sheriff's

8   deputies unlawfully pulled-over the plaintiff's vehicle, pulled him from the vehicle, and slammed and

9   pinned him face-first onto the roadway); *Soto v. County of Sacramento*, E.D. Cal. Case No. 2:19-cv-

10  00910-TLN-DB (settlement of action alleging a sheriff's deputy ignored an injured inmate's requests for

11  medical assistance, hog-tied his arms and legs, and left him to die on the floor of a holding cell); *Mitchell*

12  *v. County of Sacramento*, E.D. Cal. Case No. 2:18-cv-03252-WBS-EFB (settlement of action alleging a

13  sheriff's deputy slammed the plaintiff's head against a wall causing a concussion, breaking a tooth, and

14  splitting her lip); *Dunn v. County of Sacramento*, United States District Court, Eastern District of

15  California, Case No. 2:18-cv-02425-JAM-CKD (settlement of action alleging that two sheriff's deputies

16  unlawfully pulled-over the plaintiff's vehicle, pulled her from the vehicle, struck her in the face several

17  times with fists and a flashlight, and broken her arm); *Reynolds v. County of Sacramento*, United States

18  District Court, Eastern District of California, Case No. 2:18-cv-01150-TLN-KJN (settlement of action

19  alleging that several sheriff's deputies falsely arrested and "paraded" the handcuffed plaintiffs before

20  releasing them without charges); *Rivera v. Cater*, United States District Court, Eastern District of

21  California, Case No. 2:18-cv-00056-WBS-EFB (settlement of action where two sheriff's deputies shot

22  numerous times and killed a non-threatening, mentally-ill man suspected of burglary); *Abbott v. County*

23  *of Sacramento*, United States District Court, Eastern District of California, Case No. 2:17-cv-02698-

24  WBS-EFB (settlement of action alleging that a sheriff's deputy broke the plaintiff's foot and sprained his

25  wrist during jail booking); *Augustine v. County of Sacramento*, United States District Court, Eastern

26  District of California, Case No. 2:17-cv-02605-WBS-AC (settlement of action alleging that sheriff's

27  deputies shot and killed a non-threatening 17-year-old boy suffering from an episode of mental-illness);

28  *Ennis v. County of Sacramento*, United States District Court, Eastern District of California, Case No.

2:17-cv-02052-KJM-EFB (settlement of action alleging that a sheriff's deputy broke the plaintiff's left wrist, after the plaintiff had specifically warned the sheriff's deputy that her wrist had been previously injured); *Williams v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:17-cv-01726-JAM-EFB (settlement of action alleging that two sheriff's deputies falsely arrested and employed excessive force against the plaintiffs); *Cain v. City of Sacramento*, United States District Court, Eastern District of California, Case No. 2:17-cv-00848-JAM-DB (settlement of action alleging that a sheriff's deputies held the injured plaintiff face-down on the ground while forcibly stripping and verbally abusing him); *McCormack v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:16-cv-01303-WBS-AC (settlement of action alleging that a sheriff's deputy slammed the plaintiff's head into a wall); *DeVard v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:16-cv-00159-JAM-CKD (settlement of action alleging that a sheriff's deputy was captured on a surveillance camera punching the plaintiff in his face and slammed him into a patrol vehicle); *Shannon v. County of Sacramento*, E.D. Cal. Case No. 2:15-cv-00967-KJM-DB (settlement of action alleging excessive use of force by two sheriff's deputies who shot and killed a man carrying airsoft replica weapons); *Aviña-Luna v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:14-cv-01295-TLN-DAD (settlement of action alleging that a sheriff's deputy broke the plaintiff's right arm while applying arm-hold); *Salinas v. County of Sacramento*, Superior Court of California, County of Sacramento, Case No. 34-2013-00152323 (settlement of action alleging that a sheriff's deputy broke the plaintiff's right arm while applying arm-hold); *Lundell v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:12-cv-02832-MCE-AC (settlement of action alleging that a sheriff's deputy broke the plaintiff's right arm while applying handcuffs); *Harmon v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:12-cv-02758-TLN-AC (settlement of action alleging that sheriff's deputies shot a non-threatening man with a taser then fired 18 gunshots causing his death); *Gonsalves v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:11-cv-02506-WBS-DAD (settlement of action alleging that a sheriff's detective went to the plaintiff's home and "sucker-punched" him, "without any provocation or warning"); *Abdallah v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:11-cv-00625-

MCE-KJN (settlement of action alleging that five sheriff's deputies beat the plaintiff into unconsciousness, causing a lacerated liver, multiple cracked ribs, a broken nose, and facial lacerations); *Duran v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:10-cv-03301-GEB-GGH (settlement of action alleging that a sheriff's deputy broke the plaintiff's left arm while applying arm-hold); *Jaquez v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:10-cv-01040-MCE-DAD (settlement of action alleging that sheriff's deputies beat the plaintiff, causing a fractured right elbow and leaving a boot-imprint on his face).

181.   <u>Failure to Train, Supervise, or Discipline</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, and, thus, Defendants CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO only impose minimal, insignificant, and untimely discipline against subordinates even when misconduct was documented and acknowledged, and only issue discipline when misconduct is documented on recordings. For example, in addition to those incidents described above and incorporated herein:

(a)   On March 16, 2023, deputy Antero Reyes incorrectly attempted to move an inmate into the cell of another mentally-ill inmate who was assigned to total-separation ("T-Sep") housing at the Sacramento County Main Jail. The subject informed deputy Reyes about his housing status, to prevent the inmate from entering his cell and presenting a potential threat. In response, deputy Reyes threatened the subject, including stating: "You square up on me, we're going to fight"; "Back the fuck up"; "Don't be a bitch now"; and "Don't fucking square up on me, I'll fuck you up." The subject asked deputy Reyes if he was physically threatening him, to which deputy Reyes responded, "Yeah, let's go." Deputy Reyes assaulted the inmate, including punching him in the face four times in rapid succession. Another deputy present during the incident told deputy Reyes, "Chill, chill, chill," in attempt to stop the deputy-on-inmate assault. After the incident, deputy Reyes prepared a false report of the incident which attempted to justify his use of force and misrepresented the number of punches he utilized against the inmate. An investigation "sustained" the excessive force allegation. Sacramento County Sheriff's Department, Professional Standards Division No. 2023PSD-0170. On June 13, 2023, captain Vanessa Vaden recommended deputy Reyes be suspended for 40 hours. On June 20, 2023, chief deputy Dan Donelli

31

recommended deputy Reyes be suspended for 40 hours. On July 26, 2023, Defendant JIM COOPER "affirmed" the proposed discipline.

(b)     On September 17, 2022, Salvador Garcia Jr. was subject to excessive force by Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's personnel, including deputies Dylan Black and Royce Austin. Sacramento County Sheriff's Department, Report No. 22-277217. The subject was riding his bicycle when he was accosted by deputy Black who ordered him to "stop." The subject turned his bike on the wet grass and slipped to the ground. Deputy Black deployed his canine partner, Roscoe, which mauled the subject's right forearm. The subject screamed in pain, as deputy Black unsuccessfully attempted to handcuff the subject's arms while Roscoe continued mauling his right arm. Deputy Black tried to handcuff the subject's right arm but could not get Roscoe to stop mauling on the subject's arm. Eventually, deputy Black ripped Roscoe off of the subject's arm, further injuring him, as blood was spurting from the arm from where the subject sustained a severed artery. The subject was left lying on the ground bleeding from a severed artery, while deputy Austin failed to provide necessary medical care, including attempting to stop the bleeding from the subject's arm. The subject was hospitalized for several days and underwent reconstructive surgery as a result of the injuries sustained. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT deemed deputies' conduct to be within policy. A civil rights lawsuit was filed. *Garcia v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:23-cv-00899-DAD-KJN. The case remains pending.

(c)     On May 8, 2022, deputy Freddy Martinez conducted a traffic stop on a vehicle driven by Donald Burney. The subject was experiencing a medical emergency and opened the door of his vehicle. Deputy Martinez observed that the subject was "talking rapidly and somewhat incoherently," was "unsteady on his feet," and made "spontaneous hand movements." Deputy Martinez grabbed at the subject to apply handcuffs to his arms but he fell forward, landing on the ground. Deputy Martinez handcuffed the subject's arms behind his back. Deputy Martinez then "kept BURNEY on the ground with [his] knee on top of BURNEY's lower back/hip area" using "weight on BURNEY's lower back/hip area…" Deputy Martinez confined the subject to the back of his patrol vehicle and conducted a records research which revealed "BURNEY's diabetic history." Deputy Martinez asked the subject if he was having a diabetic emergency, to which the subject responded, "Yes." The subject had a diabetic monitor

on his arm controlled by a cell phone application which "showed BURNEY's blood sugar was at 60." The subject instructed deputy Martinez to get candy from his vehicle, which raised his blood sugar to 90-to-100. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT deemed the deputy's conduct to be within policy.

(d)     On August 1, 2021, Larry Weigle was involved in a vehicular pursuit that ended when he exited his vehicle and fled on foot. The subject was chased-down and pushed to the ground by deputy Shayn Bowen. Deputy Bowen mounted the subject and pulled his arms behind his back to apply handcuffs. The subject surrendered to deputy Bowen's efforts to arrest him and did not resist. Deputies Hunter Greenwood and Brittany Linde arrived on scene, shortly after Larry Weigle was taken to the ground. Deputy Greenwood ran towards the subdued subject and deputy Bowen. Deputy Greenwood yelled out, "Get him! Go!" Deputy Greenwood kicked the subject twice with his foot, including raising his foot and stomping on the subject's head. The subject was lying motionless and compliant on the ground with his arms behind his back, at the time that deputy Greenwood kicked and stomped him. Deputy Greenwood's stomp caused the subject's head to strike the ground, cutting his head. Deputies Bowen and Linde observed deputy Greenwood assault the subject, without justification or cause, but said and did nothing in response. Instead, deputy Linde created a false pretext for deputy Greenwood's assault, including by stating, "Give me your hand!" The subject responded, "You have it!" Then, deputy Linde stated, "Stop resisting!" The subject responded, "I'm not resisting!" Then, deputy Linde stated, "Relax!" The subject responded, "I'm relaxed!" Later that night, deputy Greenwood, a field training officer, discussed the incident with deputy Mark Hampton, his trainee. Deputy Greenwood briefly paused during the conversation with deputy Hampton to ask if he was "still hot"—*i.e.*, if deputy Hampton was currently recording their conversation with his body-worn camera. Deputy Hampton responded by touching his body-worn camera, believing that he had deactivated it, and stating, "No." Deputy Greenwood stated, "Make sure it's off." Deputy Greenwood believed that deputy Hampton had turned-off his body-worn camera but, by accident, he had not done so. Immediately thereafter, deputy Greenwood continued to discuss the incident, bragging: "I kaboomed him twice. Gave him the good ol' boot. I mean, he was pretty much done at that point. It wasn't, like—I didn't, like, curb stomp him. I just, like, threw him to the ground and kicked him on the torso once or twice." At the scene, deputy Linde

admitted to her supervisor, sergeant David Cueno, that deputy Greenwood kicked the subject. Deputy Linde also admitted that the officers did not have sufficient evidence to charge the subject with violation of California Penal Code § 69. But sergeant Cueno, deputy Bowen, and deputy Linde each failed to report deputy Greenwood's use-of-force, as required by Sacramento County Sheriff's Department's policy. Deputy Linde submitted a report falsely describing the incident, including: "WEIGLE was actively resisting by keeping his right arm tucked under his body. . . . Deputy Greenwood #684 (unit 67F2) responded and assisted Deputy Bowen and I in placing WEIGLE in handcuffs." Specifically, deputy Linde omitted from her report that deputy Greenwood had assaulted the subject by stomping him twice. The subject filed a citizen complaint. Sacramento County Sheriff's Department, Professional Standards Division No. 2022PSD-0187. During the investigation of the complaint, deputy Linde admitted that she falsely reported the subject's hands were "tucked under his body" when, if fact, they were behind his back, and, "if someone's got their hands behind their back and [an officer] run[s] up and just kick[s] somebody," that that force is "not warranted." Sergeant Cueno was also found to have failed to report use-of-force incidents on multiple occasions, including in this case. On October 18, 2022, chief deputy Santos Ramos "recommended Deputy Greenwood receive a 40-hour suspension" and "recommended Sergeant Cueno receive a 20-hour suspension." On November 28, 2022, undersheriff James Barnes rejected the recommendations and "EXONERATED" deputy Greenwood. On December 7, 2022, Defendant JIM COOPER "affirmed" undersheriff Barnes' exoneration. On June 9, 2022, the subject filed a civil rights lawsuit in connection with the incident. *Weigle v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:22-cv-01000-MCE-JDP. Defendant COUNTY OF SACRAMENTO settled the case pre-trial for $175,000.

      (e)    From December 7, 2020, through January 12, 2021, deputy Freddy Martinez improperly accessed the Sacramento County Sheriff's Department's Jail Person Files ("JPF") information database at least 22 times, and Known Persons File ("KPF") information database at least three times, for personal and non-legitimate reasons. (The investigative search for deputy Martinez's improper access was limited to the period from November 1, 2020, to January 12, 2021.) Deputy Martinez conducted the unauthorized inquiries to learn more about a suspect in the alleged assault of a family member. An anonymous citizen complaint was filed. Sacramento County Sheriff's Department,

34

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Liles v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

Professional Standards Division No. 2020PSD-0661. The complaint was deemed "Unfounded." Chief deputy Leeannedra Marchese recommended that deputy Martinez be suspended from his position as deputy sheriff for a period of 20 hours. On August 9, 2021, sheriff Scott Jones "deemed appropriate" the recommended discipline.

(f)     On March 10, 2020, deputy Spencer Wright was a "ride-along" participant with a Post-Release Community Supervision ("PRCS") joint task force. Deputies conducted a traffic stop on a vehicle driven by Brandell Sampson. The subject was directed to exit his vehicle and to walk backwards with his hands on his head, and he complied. Deputy Wright approached the subject from behind and deployed a taser against him, without justification. Then, deputy Wright jumped and kicked the subject in his back. The subject fell to the ground. Then, deputy Wright struck the subject three time on his head with the butt of the taser handle. An investigation "sustained" the excessive force allegations. Sacramento County Sheriff's Department, Professional Standards Division No. 2020PSD-0149. On July 6, 2020, captain James Barnes recommended an 80-hour suspension. On July 10, 2020, chief deputy Chet Madison recommended an 80-hour suspension. On July 30, 2020, undersheriff Erik Maness recommended an 80-hour suspension. On August 20, 2020, sheriff Scott Jones "affirmed" the proposed discipline.

(g)     On February 6, 2020, multiple deputies, including sergeant Brannon Polete and deputy Kyle Zimmerman, entered the private garage of a subject, grabbed him, and tackled him to the ground. The deputies made disparaging remarks to the subject, including calling him a "motherfucker." Sergeant Polete instructed the subject to "Say you're fucking sorry," then, when the subject did so, stated, "You are sorry, motherfucker. I am the sergeant. You're a drunk little fuck. You are going to go to jail and you will be fucking pussy in jail." When the subject asked, "What is my crime?," sergeant Polete responded, "Because you're a fucking asshole." The deputies grinned and fist-bumped with sergeant Polete after assaulting the subject, demonstrating a "celebratory" demeanor. Deputy Zimmerman attempted to mute the microphone on his belt during these interactions, in attempt to cover-up the deputies' misconduct. (Later, deputy Zimmerman lied to investigators about his ignorance related to the belt microphone functionality.) A deputy unplugged a cord connected to a surveillance camera in the subject's garage, in attempt to cover-up the deputies' misconduct. An investigation "sustained" the

35

misconduct allegations. Sacramento County Sheriff's Department, Professional Standards Division No. 2020PSD-0057. On March 30, 2020, captain Todd Henry recommended no discipline for some deputies, a 10-hour suspension for the deputy that unplugged the surveillance camera, termination of deputy Zimmerman, and demotion of sergeant Polete to deputy—based on the officers' histories of misconduct in this case and others. On April 20, 2020, chief deputy Chet Madison recommended no discipline for some deputies, a 20-hour suspension for the deputy that unplugged the surveillance camera, termination of deputy Zimmerman, and termination of sergeant Polete. On May 8, 2020, undersheriff Erik Maness recommended the 120-hour suspension of deputy Zimmerman, and the 160-hour suspension and demotion of sergeant Polete. On June 15, 2020, sheriff Scott Jones "concur[red]" with the proposed discipline.

(h)     On August 25, 2019, deputy Andrew Seidel and fellow deputies applied to a WRAP restraint device to a mentally-ill inmate at the Sacramento County Main Jail. After the subject was taken to the ground in a prone position, deputy Seidel used his knee to strike the inmate in the head, without justification. Deputy Seidel prepared a false report which omitted the excessive force used against the subject. An investigation "sustained" the excessive force allegation. Sacramento County Sheriff's Department, Professional Standards Division No. 2019PSD-0543. On April 7, 2020, chief deputy Santos Ramos recommended issuance of a "letter of reprimand." On April 20, 2020, captain Charles Meeks issued a "letter of reprimand." On April 22, 2020, sheriff Scott Jones "affirmed" the proposed discipline.

(i)     Beginning in May 2019, deputy Brittany Linde repeatedly sent threatening and inappropriate emails to Rachael Rendon at her work-related email address, where she was employed as a parole officer by the California Department of Corrections and Rehabilitation ("CDCR"). The subject was the girlfriend of deputy Linde's ex-boyfriend, Chris. For example, deputy Linde threatened the subject that she would "contact your appropriate chain of command" (deputy Linde previously worked for the CDCR) and that deputy Linde had an ongoing relationship with Chris. Deputy Linde's harassing emails caused the subject to fear for her safety and the safety of her children and family. The subject made repeated and unsuccessful requests for deputy Linde to cease her contacts. Deputy Linde also abused her access to the Sacramento County Sheriff's Department's Known Persons File ("KPF")

36

information database to view confidential information about the subject and her family members, for personal and non-legitimate reasons. The subject obtained a civil restraining order against deputy Linde which prohibited her ability to possess personal and department-issued firearms for one month. The subject's petition for restraining order identified deputy Linde's previous history of physical assault and stalking. Superior Court of California, County of Sacramento, Case No. 34-2019-7006482. The subject also filed a police report with the Folsom Police Department. Folsom Police Department, Report No. 19-093101148. The subject also filed a citizen complaint. Sacramento County Sheriff's Department, Professional Standards Division No. 2019PSD-0520. Captain James Barnes recommended that deputy Linde "be suspended from [her] position as Deputy Sheriff for a period of forty-eight (48) hours." On February 26, 2020, sheriff Scott Jones "deemed appropriate" the recommended discipline.

(j)      On May 20, 2018, deputy Brittany Linde stalked and confronted Wendy McElroy in a coffee shop, told her that she was a deputy sheriff, and threatened to assault and kill her. Deputy Linde was engaged in an ongoing affair with the subject's husband at the time of the assault and threats. The subject filed a citizen complaint. Sacramento County Sheriff's Department, Professional Standards Division No. 2018PSD-273. Captain Matt Petersen recommended that deputy Linde "receive a Documented Counseling to remain in her personnel file for a period of six (6) months." On November 7, 2018, a Documented Counseling was placed in deputy Linde's file for six months.

(k)      On April 11, 2018, deputy Daniel Garcia slammed a mentally-ill inmate against the wall causing a cut to the inmate's lip at the Sacramento County Main Jail. Deputy Garcia did not provide medical attention to the inmate for the injury he caused. An investigation "sustained" the excessive force allegation, and found that deputy Garcia lied in his report and during his interview when he falsely stated that the inmate made a furtive or threatening movement necessitating the assault. Sacramento County Sheriff's Department, Professional Standards Division No. 2018PSD-245. On August 30, 2018, captain Eric Buehler recommended deputy Garcia be suspended for 10 hours. On September 14, 2018, chief deputy Jennifer Freeworth recommended deputy Garcia be suspended for 10 hours. On November 15, 2018, sheriff Scott Jones "affirmed" the proposed discipline.

(l)      On January 8, 2017, deputy Daniel Brown was startled by mental health inmate, Cantrarutti, when he punched his cell door in the Sacramento County Main Jail. The subject laughed,

when deputy Brown become startled. Deputy Brown was embarrassed and retaliated against the subject, including by removing him from his cell, tackling him to the ground and punching him, along with several other deputies. An investigation "sustained" the excessive force allegation and found that "the use of force should have never occurred in the first place." Sacramento County Sheriff's Department, Professional Standards Division No. 2017PSD-054. On March 30, 2017, captain Eric Buehler recommended Daniel Brown be suspended for 10 hours. On April 7, 2017, chief deputy David Torgerson recommended Daniel Brown be suspended for 10 hours. On July 7, 2017, sheriff Scott Jones "affirmed" the proposed discipline.

(m)    On September 27, 2016, a deputy was involved in an excessive force incident which was recorded on video where an inmate, Monful, was tackled to the ground by a deputy at the Sacramento County Main Jail. An investigation "sustained" the excessive force allegation. Sacramento County Sheriff's Department, Professional Standards Division No. 2016PSB-530. The only discipline imposed was issuance of a 48-hour suspension.

(n)    On May 18, 2016, three deputies were involved in an excessive force incident which was recorded on video where an inmate, Roshawn Jackson, was slammed to the ground and had his arms twisted by deputies at the Sacramento County Main Jail. An investigation "sustained" the excessive force allegation. Sacramento County Sheriff's Department, Professional Standards Division No. 201PSB-212. The only discipline imposed was issuance of an 80-hour suspension.

(o)    On November 21, 2015, a deputy was involved in an excessive force incident which was recorded on video where an inmate, Yasir Mehmood, was punched and kicked by a deputy while he was defenseless and handcuffed at the Sacramento County Main Jail. An investigation "sustained" the excessive force allegation. Sacramento County Sheriff's Department, Professional Standards Division No. 2015IA-034. The only discipline imposed was issuance of a "letter of reprimand."

(p)    On July 6, 2015, a deputy was involved in an excessive force incident which was recorded on video where an inmate, Michael McCormick, was grabbed by the neck, choked, and slammed against a wall by a deputy at the Sacramento County Main Jail. An investigation "sustained" the excessive force allegation. Sacramento County Sheriff's Department, Professional Standards Division

38

No. 201PSB-029. The only discipline imposed was issuance of a "letter of reprimand" and loss of "training officer" status.

(q)     On June 5, 2015, six deputies were involved in an excessive force incident which was recorded on video where an inmate, Deshaun Williams, was slammed to the ground and had his arms and legs twisted by deputies at the Rio Cosumnes Correctional Center. An investigation "sustained" the excessive force allegation. Sacramento County Sheriff's Department, Professional Standards Division No. 2015IA-025. The only discipline imposed was issuance of a "documented counseling" and "letter of reprimand."

(r)     On January 28, 2015, a deputy was involved in an excessive force incident which was recorded on video where an inmate, Kelly Brown, had his head stepped-on by a deputy at the Sacramento County Main Jail. An investigation "sustained" the excessive force allegation. Sacramento County Sheriff's Department, Professional Standards Division No. 2015IA-005. The only discipline imposed was issuance of a "letter of reprimand."

(s)     On October 14, 2014, a deputy was involved in an excessive force incident which was recorded on video where an inmate, Andrew Moras, was slammed to the ground by a deputy at the Sacramento County Main Jail. An investigation "sustained" the excessive force allegation. Sacramento County Sheriff's Department, Professional Standards Division No. 2014IA-046. The only discipline imposed was issuance of a 48-hour suspension.

(t)     On July 25, 2014, three deputies were involved in an excessive force incident which was recorded on video where an inmate, Jordan Fagan, was slammed to the ground by deputies at the Sacramento County Main Jail. An investigation "sustained" the excessive force allegation. Sacramento County Sheriff's Department, Professional Standards Division No. 2014IA-041. The only discipline imposed was issuance of a "documented counseling."

(u)     On May 24, 2014, a deputy was involved in an excessive force incident which was recorded on video where an inmate, Barnard Jones, was pepper-sprayed by a deputy at the Rio Cosumnes Correctional Center. An investigation "sustained" the excessive force allegation. Sacramento County Sheriff's Department, Professional Standards Division No. 2014IA-028. The only discipline imposed was issuance of a one-step reduction in salary for 26 pay periods.

39

(v)     On April 25, 2014, four deputies were involved in an excessive force incident which was recorded on video where an inmate, Edward Deed, was punched and kicked by deputies at the Sacramento County Main Jail. An investigation "sustained" the excessive force allegation. Sacramento County Sheriff's Department, Professional Standards Division No. 2013IA-032. The only discipline imposed was issuance of a "letter of reprimand."

(w)     On August 20, 2013, three deputies were involved in an excessive force incident which was recorded on video where an inmate, Melanie Orantes, was punched in the head by a deputy at the Sacramento County Main Jail. An investigation "sustained" the excessive force allegation. Sacramento County Sheriff's Department, Professional Standards Division No. 2013IA-043. The only discipline imposed was issuance of a "letter of reprimand."

(x)     In 2013, a deputy was involved in an excessive force incident which was recorded on video where an inmate, Sundy Vongkhamsomphouwas, was kicked by a deputy at the Rio Cosumnes Correctional Center. An investigation "sustained" the excessive force allegation. Sacramento County Sheriff's Department, Professional Standards Division No. 2013IA-039. The only discipline imposed was issuance of a two-day suspension.

182.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, and, thus, Defendants CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO violated Senate Bill 1421, a state law requiring disclosure of documents about misconduct or significant force by personnel. *See* Cal. Pen. Code § 832.7. Media organizations were forced to sue Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT and sheriff Scott Jones, in order to compel compliance with state law. <https://ktla.com/news/local-news/sacramento-l-a-times-sue-sacramento-county-sheriffs-department-over-release-of-deputy-misconduct-records/>. As a result, Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT was ordered to "pay more than $100,000 in legal fees to The Sacramento Bee and the Los Angeles Times in its court fight to hold onto deputies' discipline records…" <https://amp.sacbee.com/article235968547.html>.

183.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, and, thus, Defendants CITY OF RANCHO CORDOVA,

40

1  RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO unreasonably delay

2  investigation and administrative findings in officer-involved incidents of personnel, including in some

3  cases for several years. For example, Defendant SACRAMENTO COUNTY SHERIFF'S

4  DEPARTMENT's backlog of investigations is greater than one and one-half years. An incident of

5  alleged misconduct occurring on December 1, 2015, remains pending and "In Progress."

6  <https://www.sacsheriff.com/pages/released_cases.php>. Defendants COUNTY OF SACRAMENTO,

7  SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, and, thus, Defendants

8  CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW

9  TAMAYO's failure timely to investigate and render findings in officer-involved incidents constitutes a

10  violation of Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's own policies and

11  procedures, renders any determination of officer culpability ineffective due to the period of time between

12  when the incident occurred and when discipline or corrective action can be taken, and perpetuates a

13  culture of impunity and unaccountability.

14  184.  Obviousness: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

15  SHERIFF'S DEPARTMENT, and JIM COOPER, and, thus, Defendants CITY OF RANCHO

16  CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO were or

17  should have been on notice regarding the need to discontinue, modify, or implement new and different

18  versions of the deficient policies or customs because the inadequacies were so obvious and likely to

19  result in violations of rights of persons coming into contact with their subordinates, including Defendants

20  CODY MICHAEL, MELISSA ADAMS, and CLAUDELL VAUGHAN MATTHEW BOLLINGER,

21  SPENCER HETTEMA, and JOHN HIGLEY.

22  185.  Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

23  DEPARTMENT, and JIM COOPER, and, thus, Defendants CITY OF RANCHO CORDOVA,

24  RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO were aware of numerous

25  incidents of their personnel's excessive and unreasonable uses-of-force, including those incidents

26  described above, but repeatedly refused or failed to take appropriate corrective action, including

27  discipline, re-training, and/or implementation of changes to policies or procedures.

28  186.  Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

41

DEPARTMENT, and JIM COOPER, and, thus, Defendants CITY OF RANCHO CORDOVA,
RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO's inadequate policies,
procedures, and training did proximately cause violation of rights of persons coming into contact with
officials, including the officer-involved shooting of KYRIEANNA LILES.

## FIRST CLAIM

### False Detention

### (U.S. Const. Amend. IV; 42 U.S.C. § 1983)

187.    Plaintiff KYRIEANNA LILES asserts this Claim against Defendants COUNTY OF
SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, CITY OF
RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, MATTHEW TAMAYO,
MATTHEW BOLLINGER, and SPENCER HETTEMA.

188.    The allegations of the preceding paragraphs 1 to 186 are realleged and incorporated, to the
extent relevant and as if fully set forth in this Claim.

189.    Defendants MATTHEW BOLLINGER and SPENCER HETTEMA conducted a false
detention, including by ordering Plaintiff KYRIEANNA LILES from her vehicle and grabbing and
pulling Plaintiff KYRIEANNA LILES's arm, without a warrant, probable cause, or reasonable suspicion,
in violation of the Fourth Amendment to the United States Constitution.

190.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S
DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE
DEPARTMENT, and MATTHEW TAMAYO maintained policies or customs of action and inaction
resulting in harm to Plaintiff KYRIEANNA LILES, in violation of the Fourth Amendment to the United
States Constitution.

191.    Defendants JIM COOPER, MATTHEW TAMAYO, MATTHEW BOLLINGER, and
SPENCER HETTEMA's actions and inactions were motivated by evil motive or intent, involved
reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

192.    Plaintiff KYRIEANNA LILES was injured as a direct and proximate result of Defendants
COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM
COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT,

42

1  MATTHEW TAMAYO, MATTHEW BOLLINGER, and SPENCER HETTEMA's actions and

2  inactions, entitling her to receive compensatory and nominal damages against Defendants COUNTY OF

3  SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, CITY OF

4  RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, MATTHEW TAMAYO,

5  MATTHEW BOLLINGER, and SPENCER HETTEMA; and punitive damages against Defendants JIM

6  COOPER, MATTHEW TAMAYO, MATTHEW BOLLINGER, and SPENCER HETTEMA.

7        WHEREFORE, Plaintiff KYRIEANNA LILES prays for relief as hereunder appears.

8                              **SECOND CLAIM**

9                              **Excessive Force**

10                   **(U.S. Const. Amend. IV; 42 U.S.C. § 1983)**

11        193.   Plaintiff KYRIEANNA LILES asserts this Claim against Defendants COUNTY OF

12  SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, CITY OF

13  RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, MATTHEW TAMAYO,

14  MATTHEW BOLLINGER, SPENCER HETTEMA, and JOHN HIGLEY.

15        194.   The allegations of the preceding paragraphs 1 to 186 are realleged and incorporated, to the

16  extent relevant and as if fully set forth in this Claim.

17        195.   Defendants MATTHEW BOLLINGER and SPENCER HETTEMA used unreasonable

18  and excessive force against Plaintiff KYRIEANNA LILES, including by grabbing and pulling Plaintiff

19  KYRIEANNA LILES's arm; shooting at Plaintiff KYRIEANNA LILES; and shooting Plaintiff

20  KYRIEANNA LILES's arm, in violation of the Fourth Amendment to the United States Constitution.

21        196.   Defendant JOHN HIGLEY used unreasonable and excessive force against Plaintiff

22  KYRIEANNA LILES, including by grabbing and slamming Plaintiff KYRIEANNA LILES to the

23  ground; roughly twisting and handcuffing Plaintiff KYRIEANNA LILES's arms behind her back; and

24  roughly searching Plaintiff KYRIEANNA LILES's person, in violation of the Fourth Amendment to the

25  United States Constitution.

26        197.   Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

27  DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE

28  DEPARTMENT, and MATTHEW TAMAYO maintained policies or customs of action and inaction

resulting in harm to Plaintiff KYRIEANNA LILES, in violation of the Fourth Amendment to the United States Constitution.

198.    Defendants JIM COOPER, MATTHEW TAMAYO, MATTHEW BOLLINGER, SPENCER HETTEMA, and JOHN HIGLEY's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to rights, or were wantonly or oppressively done.

199.    Plaintiff KYRIEANNA LILES was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, MATTHEW TAMAYO, MATTHEW BOLLINGER, SPENCER HETTEMA, and JOHN HIGLEY's actions and inactions, entitling her to receive compensatory and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, MATTHEW TAMAYO, MATTHEW BOLLINGER, SPENCER HETTEMA, and JOHN HIGLEY; and punitive damages against Defendants JIM COOPER, MATTHEW TAMAYO, MATTHEW BOLLINGER, SPENCER HETTEMA, and JOHN HIGLEY.

WHEREFORE, Plaintiff KYRIEANNA LILES prays for relief as hereunder appears.

## THIRD CLAIM

### Section 504 of the Rehabilitation Act

### (29 U.S.C. § 701, *et seq.*)

200.    Plaintiff KYRIEANNA LILES asserts this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, CITY OF RANCHO CORDOVA, and RANCHO CORDOVA POLICE DEPARTMENT.

201.    The allegations of the preceding paragraphs 1 to 186 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

202.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, CITY OF RANCHO CORDOVA, and RANCHO CORDOVA POLICE DEPARTMENT qualify as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

44

1    DEPARTMENT, CITY OF RANCHO CORDOVA, and RANCHO CORDOVA POLICE

2    DEPARTMENT receive federal financial assistance.

3         203.   Plaintiff KYRIEANNA LILES had a mental impairment that substantially limited one or

4    more major life activities, at all times material herein, including post-traumatic stress disorder ("PTSD")

5    and anxiety.

6         204.   Defendants MATTHEW BOLLINGER, SPENCER HETTEMA, JOHN HIGLEY failed

7    to provide reasonable accommodation for Plaintiff KYRIEANNA LILES's disabilities in the course of

8    investigation or arrest, causing greater injury or indignity in that process than other arrestees, where

9    reasonable accommodation was available, including, among other actions, by utilizing persons with

10   specialized training in dealing with mental illness to communicate in a non-confrontational manner; by

11   approaching in a non-confrontational manner, without displaying or threatening arrest or use-of-force; by

12   speaking to in a non-confrontational manner, with an appropriate tone of voice and without threatening

13   arrest or use-of-force; by interacting in a non-confrontational manner, including appropriate body

14   language, de-escalation, and spacing techniques; and/or by not using unreasonable and excessive force

15   against, with deliberate indifference or reckless disregard, in violation of the Rehabilitation Act, 29

16   U.S.C. § 794, *et seq*.

17        205.   Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

18   DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE

19   DEPARTMENT, and MATTHEW TAMAYO maintained policies or customs of action and inaction

20   which failed to provide reasonable accommodation for Plaintiff KYRIEANNA LILES's disabilities in

21   the course of investigation or arrest, causing greater injury or indignity in that process than other

22   arrestees, where reasonable accommodation was available, including through the promulgation and

23   implementation of appropriate policies and customs, including, among other policies and customs,

24   utilizing persons with specialized training in dealing with mental illness to communicate with mentally ill

25   subjects; preparing officers on how and when to approach mentally ill subjects; how and when to speak

26   to mentally ill subjects; how and when to interact with mentally ill subjects, including using appropriate

27   body language and tone of voice; how and when to respect the personal space of mentally ill subjects;

28   and/or how to de-escalate incidents involving mentally ill subjects without use of force, with deliberate

45

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Liles v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

1  indifference or reckless disregard, in violation of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

2  206.    Plaintiff KYRIEANNA LILES was injured as a direct and proximate result of Defendants

3  COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

4  COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT,

5  MATTHEW TAMAYO, MATTHEW BOLLINGER, SPENCER HETTEMA, and JOHN HIGLEY,

6  entitling her to receive compensatory and nominal damages against Defendants COUNTY OF

7  SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, CITY OF RANCHO

8  CORDOVA, and RANCHO CORDOVA POLICE DEPARTMENT.

9        WHEREFORE, Plaintiff KYRIEANNA LILES prays for relief as hereunder appears.

10  ## FOURTH CLAIM

11  ### Title II of the Americans with Disabilities Act

12  ### (42 U.S.C. § 12101, *et seq*.)

13  207.    Plaintiff KYRIEANNA LILES asserts this Claim against Defendants COUNTY OF

14  SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, CITY OF RANCHO

15  CORDOVA, and RANCHO CORDOVA POLICE DEPARTMENT.

16  208.    The allegations of the preceding paragraphs 1 to 186 are realleged and incorporated, to the

17  extent relevant and as if fully set forth in this Claim.

18  209.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

19  DEPARTMENT, CITY OF RANCHO CORDOVA, and RANCHO CORDOVA POLICE

20  DEPARTMENT qualify as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28

21  C.F.R. § 35.104.

22  210.    Plaintiff KYRIEANNA LILES had a mental impairment that substantially limited one or

23  more major life activities, at all times material herein, including post-traumatic stress disorder ("PTSD")

24  and anxiety.

25  211.    Defendants MATTHEW BOLLINGER, SPENCER HETTEMA, JOHN HIGLEY failed

26  to provide reasonable accommodation for Plaintiff KYRIEANNA LILES's disabilities in the course of

27  investigation or arrest, causing greater injury or indignity in that process than other arrestees, where

28  reasonable accommodation was available, including, among other actions, by utilizing persons with

46

specialized training in dealing with mental illness to communicate in a non-confrontational manner; by approaching in a non-confrontational manner, without displaying or threatening arrest or use-of-force; by speaking to in a non-confrontational manner, with an appropriate tone of voice and without threatening arrest or use-of-force; by interacting in a non-confrontational manner, including appropriate body language, de-escalation, and spacing techniques; and/or by not using unreasonable and excessive force against, with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

212.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, and MATTHEW TAMAYO maintained policies or customs of action and inaction which failed to provide reasonable accommodation for Plaintiff KYRIEANNA LILES's disabilities in the course of investigation or arrest, causing greater injury or indignity in that process than other arrestees, where reasonable accommodation was available, including through the promulgation and implementation of appropriate policies and customs, including, among other policies and customs, utilizing persons with specialized training in dealing with mental illness to communicate with mentally ill subjects; preparing officers on how and when to approach mentally ill subjects; how and when to speak to mentally ill subjects; how and when to interact with mentally ill subjects, including using appropriate body language and tone of voice; how and when to respect the personal space of mentally ill subjects; and/or how to de-escalate incidents involving mentally ill subjects without use of force, with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

213.    Plaintiff KYRIEANNA LILES was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, MATTHEW TAMAYO, MATTHEW BOLLINGER, SPENCER HETTEMA, and JOHN HIGLEY, entitling her to receive compensatory and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, CITY OF RANCHO CORDOVA, and RANCHO CORDOVA POLICE DEPARTMENT.

WHEREFORE, Plaintiff KYRIEANNA LILES prays for relief as hereunder appears.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff KYRIEANNA LILES seeks Judgment as follows:

1.      For an award of compensatory, general, special, and nominal damages (including under federal and state law) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, MATTHEW TAMAYO, MATTHEW BOLLINGER, SPENCER HETTEMA, and JOHN HIGLEY, in excess of $1,000,000, according to proof at trial;

2.      For an award of exemplary/punitive damages against Defendants JIM COOPER, MATTHEW TAMAYO, MATTHEW BOLLINGER, SPENCER HETTEMA, and JOHN HIGLEY, in an amount sufficient to deter and to make an example of them, because their actions and/or inactions, as alleged, were motivated by evil motive or intent, involved reckless or callous indifference to constitutionally and statutorily protected rights, or were wantonly or oppressively done, and/or constituted oppression and/or malice resulting in great harm;

3.      For an award of actual damages, treble damages, punitive damages, civil penalties, and any other available relief against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, CITY OF RANCHO CORDOVA, RANCHO CORDOVA POLICE DEPARTMENT, MATTHEW TAMAYO, MATTHEW BOLLINGER, SPENCER HETTEMA, and JOHN HIGLEY, pursuant to California Civil Code §§ 52, 52.1, and any other statute as may be applicable (except that no punitive damages are sought against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, CITY OF RANCHO CORDOVA, and RANCHO CORDOVA POLICE DEPARTMENT, pursuant to California Civil Code § 818);

4.      For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988; 29 U.S.C. § 794; 42 U.S.C. § 12205; California Civil Code § 52.1; California Code of Civil Procedure § 1021.5; and any other statute as may be applicable;

5.      For interest; and

6.      For an award of any other further relief, as the Court deems fair, just, and equitable.

48

Dated: February 6, 2024

Respectfully Submitted,

By: _____

    Mark E. Merin
    Paul H. Masuhara
    LAW OFFICE OF MARK E. MERIN
    1010 F Street, Suite 300
    Sacramento, California 95814
    Telephone: (916) 443-6911
    Facsimile: (916) 447-8336

    Attorneys for Plaintiff
    KYRIEANNA LILES

49

## JURY TRIAL DEMAND

A JURY TRIAL IS DEMANDED on behalf of Plaintiff KYRIEANNA LILES.

Dated: February 6, 2024

Respectfully Submitted,

By: _____
    Mark E. Merin
    Paul H. Masuhara
    LAW OFFICE OF MARK E. MERIN
    1010 F Street, Suite 300
    Sacramento, California 95814
    Telephone: (916) 443-6911
    Facsimile: (916) 447-8336

    Attorneys for Plaintiff
    KYRIEANNA LILES

50